UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CAROL LYNN GIVENS,**

   **Plaintiff,**

 v.             **Civil Action 2:22-cv-4252**
                **Judge Sarah D. Morrison**
                **Magistrate Judge Chelsey M. Vascura**

**SHADYSIDE POLICE**
**DEPARTMENT,** *et al.*,

   **Defendants.**

## REPORT AND RECOMMENDATION

 Plaintiff, Carol Lynn Givens, an Ohio resident who is proceeding without the assistance of counsel, brings this action against the Shadyside Police Department and several officials of the Village of Shadyside and Belmont County, Ohio, alleging that Defendants retaliated against her for exercising her First Amendment rights to run for office and petition the government. This matter is before the Court for the initial screen of Plaintiff's Complaint under 28 U.S.C. § 1915(e) to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Having performed the initial screen, for the reasons that follow, Plaintiff **MAY PROCEED** on her individual-capacity claims for First Amendment retaliation against Shadyside Assistant Police Chief Jeffrey Todd Loeffler. The undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiff's remaining claims for failure to state a claim on which relief may be granted.

This matter is also before the Court for consideration of Plaintiff's motion for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a)(1) and (2), which is **GRANTED**. It is **ORDERED** that Plaintiff be allowed to prosecute her action without prepayment of fees or costs and that judicial officers who render services in this action shall do so as if the costs had been prepaid.

## I.     STANDARD OF REVIEW

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e) as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that–
>
> * * *
>
> (B) the action or appeal--
>
>> (i) is frivolous or malicious; [or]
>>
>> (ii) fails to state a claim on which relief may be granted . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). See also

*Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal and factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "detailed factual allegations, a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A complaint will not "suffice if it tenders naked assertion devoid of further factual enhancement." *Id.* (cleaned up). Instead, in order to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id*. (cleaned up). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "to less stringent standards than formal pleadings drafted by lawyers." *Garrett v. Belmont Cty. Sheriff's Dep't*, 374 F. App'x 612, 614 (6th Cir. 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "courts should not have to guess at the nature of the claim asserted." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

II.     ANALYSIS

Plaintiff alleges that in 2021, her son Greg Givens ran for mayor of Shadyside against the incumbent mayor, Robert Newhart. (Compl. ¶ 8, ECF No. 1-1.) Plaintiff also ran for a seat on the Village Council for the Village of Shadyside in the same election. (*Id.* at PAGEID #33.) Plaintiff further alleges that she made several reports to the Shadyside Police Department regarding criminal conduct against her family by several associates of Mayor Newhart. (*Id.* at ¶ 36.) In retaliation for these activities, Defendants Shadyside Police Department, Shadyside Police Chief Donald L. Collette, Shadyside Assistant Police Chief Jeffrey Todd Loeffler, Shadyside Village Code Administrator Joseph Klug, and Belmont County Prosecuting Attorney Kevin Flanagan allegedly instituted a campaign of harassment against Plaintiff's family, ranging from having their vehicles towed, to making defamatory statements about them, to threatening them with physical violence, to the wrongful death of Plaintiff's brother-in-law, Dennis Givens. (*Id.* at ¶¶ 9, 26–29, 35–36, 41, 47.) Plaintiff's Complaint lists four counts, but Count III (for "Misappropriation/Official Abuse of Position of Authority and Office") appears to be redundant with Count II ("Retaliation for Reporting Federal and State Crime(s)"), and Count IV simply lists Plaintiff's requests for monetary and injunctive relief. The undersigned therefore construes Plaintiff's Complaint to advance two claims: Count I (wrongful death of Dennis Givens), and Count II (First Amendment retaliation under 42 U.S.C. § 1983).

A.     **Claims by Greg Givens**

As an initial matter, the Complaint lists only Carol Givens as a Plaintiff in the case caption and is signed only by Carol Givens, but the body of the Complaint also at times refers to Greg Givens as a Plaintiff. Because "a nonlawyer can't handle a case on behalf of anyone except himself," *Zanecki v. Health Alliance Plan of Detroit*, 576 F. App'x 594, 595 (6th Cir. 2014) (cleaned up), Carol Givens may not maintain an action on Greg Givens's behalf. Therefore, to

4

the extent the Complaint purports to advance any claims on behalf of Greg Givens, the undersigned **RECOMMENDS** that those claims be dismissed.

**B.     Wrongful Death**

Plaintiff's Count I claim for wrongful death states in a conclusory fashion that Defendants are responsible for the death of her brother-in-law Dennis Givens, but provides no facts concerning the time or manner of his death or who in particular was responsible. Even liberally construing Plaintiff's allegations, she has failed to plausibly allege any facts suggesting that any of the Defendants are responsible for Dennis Givens's death. Accordingly, the undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiff's Count I for wrongful death.

**C.     Official-Capacity Claims**

Plaintiff's Count II claim for First Amendment retaliation is asserted against all five Defendants in both their official and individual capacities. "While personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law, individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (cleaned up) (quoting *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)). Thus, "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Applied here, Plaintiff's official-capacity claims are advanced against the Village of Shadyside and Belmont County.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Nichols v. Wayne Cty. Mich.*, 822 F. App'x 445, 448 (6th Cir. 2020) ("To state a municipal-liability claim under § 1983, the plaintiff must allege the

5

deprivation (1) of a right secured by the Constitution or laws of the United States, (2) that was directly caused by a municipal policy or custom.") (citing *Hardrick v. City of Detroit,* 876 F.3d 238, 243 (6th Cir. 2017)). A plaintiff may prove an unconstitutional "policy" or "custom" by demonstrating one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga,* 398 F.3d 426, 429 (6th Cir. 2005)).

Here, Plaintiff has not plausibly alleged any facts upon which the Court could rely to conclude that an official policy or custom of the Village of Shadyside or Belmont County resulted in the violation of her constitutional rights. Consequently, it is **RECOMMENDED** that, to the extent Plaintiff intends to sue Defendants in their official capacities for First Amendment retaliation, those claims be **DISMISSED**.

Similarly, the Shadyside Police Department, "being a mere arm of the [Village of Shadyside], is not its own entity, and is not capable of being sued (*i.e.*, it is not *sui juris*)." *Hale v. Vance*, 267 F. Supp. 2d 725, 737 (S.D. Ohio 2003). Accordingly, it is further **RECOMMENDED** that Plaintiff's Claims against the Shadyside Police Department be **DISMISSED**.

### D.     Individual-Capacity Claims against Kevin Flanagan

The undersigned moves next to Plaintiff's individual-capacity claims. No matter how liberally the Court construes Plaintiff's Complaint, Belmont County Prosecuting Attorney Kevin Flanagan is entitled to absolute immunity from civil liability. Prosecutors are entitled to absolute immunity from suit when acting within the scope of their duties. *See Imber v. Pachtman*, 424 U.S. 409, 427 (1976) (prosecutors immune for actions taken within the scope of duty). Plaintiff's

6

Complaint states only that Flanagan failed to act on Plaintiff's reports of criminal activity and contains no plausible allegations upon which this Court could rely to conclude that Flanagan's actions were taken outside the scope of his prosecutorial duties. (Compl. ¶ 41, ECF No. 1-1.) Accordingly, the undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiff's individual-capacity claims against Kevin Flanagan.

**E.        Individual-Capacity Claims against Donald Collette and Joseph Klug**

Plaintiff alleges Defendant Donald Collette had Greg Givens's car towed, engaged in "menacing of power lines and utilities" at the campaign headquarters used by Carol and Greg Givens, and drew his gun on Carol Givens. (Compl. ¶¶ 27, 35, 41, ECF No. 1-1.) Plaintiff further alleges that Defendant Joseph Klug falsely attested that Carol and Greg Givens were drunk while circulating petitions for their candidacy for mayor and village council president, falsely attested that Carol, Greg, and/or Dennis Givens were properly served with notice concerning village code violations, menaced Carol and Greg Givens outside their home with torches and weapons, and trespassed and dumped debris on Carol and Greg Givens's property. (*Id.* at ¶¶ 26, 28, 37–38.) Plaintiff alleges in a conclusory fashion that these actions were taken in retaliation for Carol's prior testimony in a criminal case, Carol and Greg's political opposition of Mayor Newhart, or Carol's reports of criminal activity to the Shadyside Police Department. (*Id.* at, *e.g.*, ¶¶ 10, 22, 26–29, 35, 41.)

"As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (cleaned up). In order to adequately plead a First Amendment retaliation claim, a plaintiff must allege:

> (1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from

7

> continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Plaintiff's Complaint sufficiently alleges that at least some of her conduct is protected activity and that Collette and Klug took adverse actions against her. *See*, *e.g.*, *Rudd v. City of Norton Shores, Mich.*, 977 F.3d 503, 513–14 (6th Cir. 2020) (filing complaints is a protected exercise of the First Amendment right to petition the government); *Kubala v. Smith*, 984 F.3d 1132, 1139 (6th Cir. 2021) ("[A]ttending political functions in support of candidates and running for political office are paradigmatic examples of protected speech."); *Zilich v. Longo*, 34 F.3d 359, 365 (6th Cir. 1994) (finding "physical threats, harassment and vandalism" to be sufficient adverse actions to support a First Amendment retaliation claim).

However, Plaintiff has not alleged any facts on which the Court could rely to conclude that Collette's and Klug's adverse actions were motivated by Plaintiff's protected conduct. Although "proof of an official's retaliatory intent rarely will be supported by direct evidence of such intent," *Bloch v. Ribar*, 156 F.3d 673, 682 (6th Cir. 1998), "conclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state a claim." *Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010) (cleaned up). Here, Plaintiff has not alleged any facts that could constitute even circumstantial evidence of retaliatory motive by either Collette or Klug, such as temporal proximity between the protected conduct and the adverse action, or disparate treatment by Collette and Klug of individuals similarly situated to Plaintiff. *Cf. Hill*, 630 F.3d at 475–76. Plaintiff's allegations that Collette's and Klug's actions were motivated by her protected conduct are merely conclusory and are therefore insufficient. Accordingly, the undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiff's individual-capacity claims against Defendants Collette and Klug.

F.         **Individual-Capacity Claims against Jeffrey Todd Loeffler**

Plaintiff alleges that on May 19, 2022, she attempted to report a crime to the Shadyside Police Department, but that Defendant Loeffler "lunged" at her while screaming "no more!" and "that's enough!" in reference to Plaintiff's reports of criminal activity. (Compl. ¶ 36, ECF No. 1-1.) Plaintiff further alleges that on other occasions, Loeffler had her campaign van towed, filed false police reports against her, and pulled his gun on her without probable cause. (*Id.* at ¶¶ 29, 31, 47.) Again, Plaintiff has sufficiently alleged protected activity (petitioning the government by filing criminal complaints) and an adverse action by Loeffler (threatening her with violence and harassing her by towing her vehicle and filing false police reports). *See Rudd*, 977 F.3d at 513–14; *Zilich*, 34 F.3d at 365. Additionally, in contrast to her claims against Defendants Collette and Klug, Plaintiff's allegation that Defendant Loeffler threatened her with physical violence while admonishing her to stop filing criminal complaints is sufficient to plausibly allege that Loeffler was motivated by Plaintiff's protected activity when he took these adverse actions against Plaintiff. Accordingly, Plaintiff **MAY PROCEED** on her individual-capacity claim against Defendant Loeffler for First Amendment retaliation.

### III.     DISPOSITION

For the foregoing reasons, Plaintiff **MAY PROCEED** on her individual-capacity claims for First Amendment retaliation against Shadyside Assistant Police Chief Jeffrey Todd Loeffler. The undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiff's remaining claims for failure to state a claim on which relief may be granted.

### PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those

specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                              */s/ Chelsey M. Vascura*
                                              CHELSEY M. VASCURA
                                              UNITED STATES MAGISTRATE JUDGE